UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

____

RODRICK SMITH JR.,

        Plaintiff,

v.

UNKNOWN HOUGHTON et al.,

        Defendants.

_____/

Case No. 2:25-cv-153

Honorable Sally J. Berens

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is

fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's official capacity, PREA, Eighth Amendment, and Fourteenth Amendment substantive due process claims for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment religious exercise and Fourth Amendment claims against Defendant Houghton and his First Amendment retaliation claim against Defendant Int-Hout remain in the case.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan. The events about which he complains, however, occurred at the Newberry Correctional Facility (NCF) in

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

Newberry, Luce County, Michigan. Plaintiff sues Defendants Unknown Houghton and Mrs. Unknown Int-Hout in their official and personal capacities. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that he arrived at NCF on May 7, 2025, and was subjected to a strip search by Defendant Houghton as a "new ride in." (ECF No. 1-2, PageID.12.) Plaintiff states that Defendant Houghton ordered him to step inside a bathroom and start undressing. Plaintiff asked Defendant Houghton to change his gloves because they were dirty and to shut the bathroom door because five other prisoners were seated so that they could see inside the bathroom, as well as any staff that might walk by during the search. (*Id.*) Defendant Houghton stated, "No, get used to others seeing you naked, now start undressing." (*Id.*) As Plaintiff was removing his clothing, he noticed Defendant Houghton smiling and smirking. Plaintiff then saw that Defendant Houghton's body camera was on, causing him to feel violated and humiliated. (*Id.*) Plaintiff also saw other prisoners watching the search and whistling and laughing at him. (*Id.*) Plaintiff tried to hurry up to "lift [his] private [sic], swat, cough and spread [his] buttocks," but after Plaintiff spread his buttocks Defendant Houghton ordered him to do so two more times and then laughed. (*Id.*) While Plaintiff stood naked as Defendant Houghton searched his clothing, other staff including two female staff members walked by and stopped to look inside the bathroom to see why other prisoners were laughing. (*Id.*) Plaintiff claims that he is Muslim and that exposing his bodies to others violated his religious beliefs, in addition to constituting cruel and unusual punishment. (*Id.*, PageID.9.)

Following the incident, Plaintiff reported it to Sergeant Ward (not a Defendant), who told Plaintiff that it was not his concern. (*Id.*, PageID.12.) The next day, Plaintiff requested to see the mental health provider, who contacted the PREA inspector. (*Id.*)

On May 9, 2025, Plaintiff was returning to his housing unit from outside and saw Defendant Houghton in the hallway. As Plaintiff walked past, Defendant Houghton said, "I should

4

send you up front and conduct another strip search to have you show me your penis again." (*Id.*) Plaintiff continued walking and reported the incident. (*Id.*, PageID.12–13.) On May 12, 2025, Plaintiff was walking from the law library when Defendant Houghton stopped him and said that if Plaintiff did not show him his penis, he would have Plaintiff sent to the hole and show other staff the video of Plaintiff being strip searched. Plaintiff immediately reported the incident. (*Id.*, PageID.13.)

On May 14, 2025, Defendant Int-Hout told Plaintiff to report to the Inspector's office. When Plaintiff returned to the unit, Defendant Int-Hout was in Plaintiff's cube conducting a shakedown. As Defendant Int-Hout was leaving the cube, she stated, "Since you filing PREAs against other staff I'm make [sic] you suffer." (*Id.*) Plaintiff then saw that his legal papers had been destroyed, and there was coffee on his sheets. (*Id.*)

On May 23, 2025, Defendant Int-Hout conducted another cube shakedown and threw away Plaintiff's medical catheters. Plaintiff went to the unit office and asked Defendant Int-Hout why she threw away his medical supplies, but she ordered him to "get out of her office." (*Id.*) Later that day, Defendant Houghton saw Plaintiff in the unit lobby with other prisoners and stated loudly, "Do these other inmates know you like exposing your penis to me?" (*Id.*) Defendant Houghton then laughed and walked into the office. (*Id.*)

On May 25, 2025, Defendant Int-Hout called Plaintiff into the office and stated, "Since you like filing PREA you got your wish so pack up you riding out." (*Id.*) After Plaintiff packed up his property, Defendant Int-Hout conducted another shakedown and emptied all of Plaintiff's property on the floor and poured water over it. (*Id.*)

5

Plaintiff claims that Defendants' conduct violated his rights under the First, Fourth, Eighth, and Fourteenth Amendments, as well as the PREA. (*Id.*, PageID.9–10.) Plaintiff seeks compensatory and punitive damages. (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

6

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims

As an initial matter, Plaintiff seeks damages as relief and brings claims against Defendants in both their individual and official capacities. Ordinarily, a suit against an individual in his or her official capacity is equivalent to a suit brought against the governmental entity, in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). However, "the MDOC is not a 'person' within the meaning of 42 U.S.C. § 1983." *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will v. Mich. Dep't of Corr.*, 491 U.S. 58, 71 (1989) for the proposition that "the MDOC is not a person within the meaning of 42 U.S.C. § 1983.") Accordingly, Plaintiff has failed to state a claim against Defendants in their official capacities.[2]

---

[2] Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, any claims by Plaintiff against Defendants in their official capacities for money damages would also be barred by sovereign immunity.

### B. PREA Claims

Plaintiff claims that Defendants violated the Prison Rape Elimination Act (PREA), 34 U.S.C. § 30301 et seq.,[3] but that statute does not provide him any relief. Plaintiff "has no independent cause of action for any Defendant's failure to comply with the Prison Rape Elimination Act." *Wilson v. PTS of America, LLC*, No. 1:16-cv-1250, 2018 WL 1040348, at *3 (W.D. Mich. Jan. 22, 2018) (quoting *Beeman v. Heyns*, No. 1:16-cv-27, 2016 WL 1316771, at *12 n.4 (W.D. Mich. Apr. 5, 2016)); *see also Montgomery v. Harper*, No. 5:14-CV-P38R, 2014 WL 4104163, at *2 (W.D. Ky. Aug. 19, 2014) ("Although not addressed in the Sixth Circuit, district courts have found that the PREA does not create a private cause of action which can be brought by an individual plaintiff.")); *McCloud v. Prack*, 55 F. Supp. 3d 478, 482 n.2 (W.D.N.Y. 2014) ("'[N]othing in the statute suggests that PREA intended to establish a private cause of action for allegations of prison rape, and every court to address the issue has determined that PREA cannot support such a cause of action by an inmate.'") (quoting *Amaker v. Fischer*, No. 10-CV-0977, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014) (collecting cases)); *Barhite v. Berghuis*, No. 1:14-cv-670, 2014 WL 4627166, at *5 (W.D. Mich. Sept. 15, 2014) ("Plaintiff's request is predicated on the assumption that the PREA provides him a cause of action for Defendants' alleged sexual assaults. It does not."). Accordingly, Plaintiff's claims under the PREA will be dismissed.

### C. Fourth Amendment Claims

Plaintiff asserts that Defendant Houghton violated his rights under the Fourth Amendment when he conducted an unreasonable strip search on Plaintiff on May 7, 2025. Both the Supreme Court and the Sixth Circuit have recognized that prisoners and detainees may be subjected to strip searches and body-cavity searches without individualized suspicion. *See Florence v. Bd. of Chosen*

---

[3] Plaintiff cites 42 U.S.C. § 15601, but Congress transferred the PREA to 34 U.S.C. § 30301, effective September 1, 2017.

8

*Freeholders*, 566 U.S. 318, 333-34 (2012) (rejecting the argument that correctional officials need reasonable suspicion to conduct visual body-cavity searches upon inmates at the time they are admitted to the general jail population); *Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 575 (6th Cir. 2013) ("[S]uspicionless strip searches [are] permissible as a matter of constitutional law . . . ."); *see also Salem v. Mich. Dep't of Corr.*, 643 F. App'x 526, 529 (6th Cir. 2016). Nevertheless, strip searches "may be unreasonable by virtue of the way in which [they are] conducted." *Williams v. City of Cleveland*, 771 F.3d 945, 952 (6th Cir. 2014) (holding that searches must be conducted in a manner that is reasonably related to the jail's legitimate objectives and that allegations that female prisoners were forced to sit on a chair and spread their labia in unsanitary conditions and in full view of other prisoners were sufficient to state a claim for unreasonable search and seizure) (citing *Stroudemire*, 705 F.3d at 574). In determining the reasonableness of a search, courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. *Stroudemire*, 705 F.3d at 572 (citing *Bell v. Wolfish*, 441 U.S. 520, 559 (1979)).

In this case, Plaintiff claims that Defendant Houghton conducted the strip search with the door open, knowing that other prisoners and staff in the hallway could view the strip search despite the fact that it was not an emergency. (ECF No. 1-1, PageID.9.) Plaintiff states that the strip search was observed by five other prisoners and other prison staff, including two female members of staff who were passing in the hallway. (*Id.*) Plaintiff alleges that Defendant Houghton told him to get used to other people seeing him naked and that he was smiling and smirking during the search. (ECF No. 1-2, PageID.12.) Plaintiff saw other prisoners watching the search and whistling and laughing at him. (*Id.*) Plaintiff tried to hurry up to "lift [his] private [sic], swat, cough and spread [his] buttocks," but after Plaintiff spread his buttocks Defendant Houghton ordered him to do so

9

two more times and then laughed. (*Id.*) While Plaintiff stood naked as Defendant Houghton searched his clothing, other staff including two female staff members walked by and stopped to look inside the bathroom to see why other prisoners were laughing. (*Id.*)

Although Plaintiff's Fourth Amendment claim is far from being proven, at this point in the litigation, Plaintiff has stated sufficient facts to raise the issue of whether the search was conducted in an unreasonable manner in violation of the Fourth Amendment.

### D. Eighth Amendment Claims

Plaintiff claims that Defendant Houghton violated his Eighth Amendment rights when he subjected him to a strip search while using his body cam and refused to change his dirty gloves or to shut the door into the hallway, which exposed Plaintiff's nudity to other prisoners and prison staff, including two female staff members. Defendant Houghton stated, "No, get used to others seeing you naked, now start undressing." (ECF No. 1-2, PageID.12.) As Plaintiff was removing his clothing, he noticed Defendant Houghton smiling and smirking and saw other prisoners watching the search and whistling and laughing at him. (*Id.*) Plaintiff states that after he complied with Defendant Houghton's order to spread his buttocks, Defendant Houghton ordered him to do so two more times and then laughed. (*Id.*)

The Eighth Amendment embodies a constitutional limitation on the power of the states to punish those convicted of a crime. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981); *see also Trop v. Dulles*, 356 U.S. 86, 101 (1958). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346. Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

10

In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, directing that they may not use excessive physical force against prisoners and must also "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–527 (1984)).

Plaintiff alleges that Defendant Houghton's conduct during the strip search caused him to feel humiliated and degraded. The Court notes that the United States Court of Appeals for the Sixth Circuit has held that an Eighth Amendment claim regarding a strip-search is not cognizable when the plaintiff has not alleged any physical injury from the strip-search. *See Jackson v. Herrington*, 393 F. App'x 348, 354 (6th Cir. 2010); *Harden–Bey v. Rutter,* 524 F.3d 789, 795 (6th Cir. 2008)). Here, Plaintiff does not allege that he sustained any physical injury as a result of Defendant Houghton's conduct.

Plaintiff also alleges that on May 9, 2025, two days after the strip search, Defendant saw Plaintiff walking past and said, "I should send you up front and conduct another strip search to have you show me your penis again." (ECF No. 1-2, PageID.12.) Plaintiff continued walking and reported the incident. (*Id.*, PageID.12–13.) On May 12, 2025, Plaintiff was walking from the law library when Defendant Houghton stopped him and said that if Plaintiff did not show him his penis, he would have Plaintiff sent to the hole and show other staff the video of Plaintiff being strip searched. Plaintiff immediately reported the incident. (*Id.*, PageID.13.)

To the extent that Plaintiff is asserting that Defendant Houghton sexually harassed him, the facts he alleges (while unprofessional and inappropriate) do not rise to the level of an Eighth Amendment violation. "Federal courts have long held that sexual abuse is sufficiently serious to violate the Eighth Amendment. . . . This is true whether the sexual abuse is perpetrated by other inmates or by guards." *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019). The Eight

11

Amendment may be violated "even in the absence of physical touching by a guard." *Id.* at 1097. Although "'isolated, brief, and not severe' instances of sexual harassment do not give rise to Eighth Amendment violations," instances of repeated or forced sexual demands can meet this threshold. *See id.* at 1095-96 (quoting *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005), *abrogated on other grounds by Maben v. Thelen,* 887 F.3d 252 (6th Cir. 2018)).

Plaintiff does not allege that Defendant Houghton physically contacted Plaintiff in an improper manner during the search or on the two subsequent occasions when he made comments to Plaintiff about the strip search and the fact that it had been filmed. Plaintiff claims only that Defendant's camera recorded the search, that the search was observed by other inmates and staff, and that Defendant made inappropriate sexual remarks. The Sixth Circuit has held that employing a camera to document the lawful strip search of an inmate does not violate either the Fourth or Eighth Amendments. *See Hubbert v. Myers*, No. 92-1232, 1993 WL 326707, at *1 (6th Cir. Aug. 26, 1993) (affirming summary judgment against a plaintiff who alleged that the defendants conducted a strip search which was videotaped by a female employee). *See also McGibbon v. Stephenson*, No. 22-12167, 2023 WL 8543146, at *3 (E.D. Mich. Dec. 11, 2023) ("The law is clear that the mere act of videorecording a strip search does not violate an inmate's constitutional rights."); *Sanchez v. Bauer*, No. 14-CV-02804-MSK-KLM, 2015 WL 5026195, at *6 (D. Colo. Aug. 26, 2015) (finding allegation that the plaintiff was "video recorded" while he was strip searched failed to state a Fourth Amendment claim); *Smith v. City of N.Y.*, No. 14 Civ. 5934(JCF), 2015 WL 3929621, at *2 (S.D.N.Y. June 17, 2015) (recognizing that "neither the presence of cameras nor the presence of other inmates and employees of a correctional facility makes an otherwise constitutional strip search unconstitutional"); *Peek v. City of N.Y.*, No. 13-cv-4488 (AJN), 2014 WL 4160229, at *2 (S.D.N.Y. Aug. 18, 2014) (dismissing a Fourth Amendment claim

12

based on a strip search in front of a camera because "[w]ithout more ... the presence of a camera at a strip search does not amount to a constitutional violation"); *Cf. Cornwell v. Dahlberg*, 963 F.2d 912, 917 (6th Cir. 1992) (holding that prisoners subjected to an outdoor strip search in front of a number of female officers created the question of a constitutional violation).

As noted above, brief instances of harassment, without more, do not rise to the level of an Eighth Amendment violation. And where, as here, a prisoner alleges verbal harassment by a prison employee, such allegations do not set out an Eighth Amendment violation.

### E. Fourteenth Amendment Substantive Due Process

Plaintiff states that Defendant Houghton's strip search also violated his rights under the Fourteenth Amendment. The Court construes this as asserting a violation of substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the

13

conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 269 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners), *overruled on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001)). If such an amendment exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, as set forth in detail above, there are specific constitutional amendments that apply to Plaintiff's claims. The Eighth Amendment provides an explicit source of constitutional protection to Plaintiff concerning his cruel and unusual punishment and sexual harassment claims. *See Graham*, 490 U.S. at 394 *(*citing *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (rejecting a substantive due process claim where the Eighth Amendment supplies a textual source for prison-condition claims)); *Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008) (because the Eighth Amendment supplies the explicit textual source of constitutional protection for claims governing a prisoner's health and safety, the plaintiff's substantive due process claim was subject to dismissal). Similarly, the First Amendment provides an explicit textual source of constitutional

14

protection for Plaintiff's religious freedom claims, and the Fourth Amendment provides protection from unreasonable searches. Thus, the standard applicable to those sources, and not the more generalized notion of substantive due process should be applied. *Albright*, 510 U.S. at 269; *Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002). Consequently, Plaintiff's substantive due process claim against Defendant Houghton will be dismissed.

### E. First Amendment Religious Rights Claims

Plaintiff asserts that he is Muslim and that the exposure of his naked body to others by Defendant Houghton, particularly to members of the opposite sex, violates his religious beliefs. The First Amendment to the United States Constitution states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof. . . ." U.S. Const. amend. I. The First Amendment protects an inmate's right to freely exercise his or her religion. To state a Section 1983 First Amendment free exercise claim, Plaintiff must show that Defendant Houghton's actions "substantially burdened his sincerely-held religious beliefs." *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010) (citing *Boles v. Neet*, 486 F.3d. 1177, 1182 (10th Cir. 2007)). However, an isolated interference with the free exercise of religion does not give rise to a constitutional violation. *Greenberg v. Hill*, No. 2:07-CV-1076, 2009 WL 890521, at *6, 2009 U.S. Dist. LEXIS 28027 at *6 (S.D. Ohio Mar. 31, 2009) ("[I]solated or sporadic government action or omission is de minimis and does not constitute a 'substantial burden.'").

Plaintiff asserts that Defendant Houghton's purposeful exposure of Plaintiff's body to others who were seated or passing in the hallway outside the room in which he was being searched violated his religious rights. Where a strip search is reasonably related to legitimate penological interests and is conducted in a reasonable manner, there is no First Amendment violation. *Still v. Wilkinson*, 7 F. App'x 356, 357–58 (6th Cir. 2001) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). However, as noted above, Plaintiff has stated sufficient facts to raise the issue of whether the search

15

was conducted in an unreasonable manner. The Court notes that on initial review of his complaint, it is far from clear that Plaintiff's First Amendment religious rights were violated. However, at this point in the litigation, Plaintiff has alleged sufficient facts to state a First Amendment religious exercise claim against Defendant Houghton.

### F.  First Amendment Retaliation Claims

Plaintiff claims that Defendant Int-Hout retaliated against him for filing a PREA grievance by destroying and disposing of his property during cell shakedowns. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that on May 14, 2025, Defendant Int-Hout destroyed his legal papers and poured coffee on his sheets, telling Plaintiff that, because he filed PREAs on staff, Defendant Int-Hout was going to make him suffer. (ECF No. 1-2, PageID.13.) On May 23, 2025, Defendant Int-Hout conducted another cube shakedown and threw away Plaintiff's medical catheters. (*Id.*) Finally, on May 25, 2025, Defendant Int-Hout called Plaintiff into the office and stated, "Since you like filing PREA you got your wish so pack up you riding out." (*Id.*) After Plaintiff packed up his property, Defendant Int-Hout conducted another shakedown and emptied all of Plaintiff's property on the floor and poured water over it. (*Id.*)

16

The Court concludes that, at this point in the litigation, Plaintiff has alleged sufficient facts to state a First Amendment retaliation claim against Defendant Int-Hout.

### Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's official capacity, PREA, Eighth Amendment, Fourteenth Amendment substantive and due process claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's First Amendment religious exercise and Fourth Amendment claims against Defendant Houghton and his First Amendment retaliation claim against Defendant Int-Hout remain in the case.

An order consistent with this opinion will be entered.

Dated:   August 12, 2025                                   /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           United States Magistrate Judge