UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODRICK SMITH #845751,

Plaintiff,

v.

ANDREW HOUGHTON, et al.,

Defendants.

______________________________/

Hon. Jane M. Beckering

Case No. 2:25-cv-153

**REPORT AND RECOMMENDATION**

Presently before me is Defendants' Motion for Summary Judgment in which they request: (1) that the Court exercise its inherent authority to sanction serious misconduct of a party and dismiss this action in its entirety based on Plaintiff's perjured testimony and false allegations; or alternatively (2) grant Defendants summary judgment on all claims. (ECF No. 22.) The motion is fully briefed and ready for decision. Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** the motion and **dismiss** this entire action pursuant to its inherent authority to sanction a party for bad faith misconduct based on Plaintiff's perjured deposition testimony and knowingly false sworn factual allegations in his complaint.

**I. Background**

Plaintiff, a former prisoner with the Michigan Department of Corrections (MDOC), filed his complaint in this action on June 30, 2025, while incarcerated at the Marquette Branch Prison. Plaintiff sued Corrections Officer (CO) Andrew Houghton based on a strip search that he performed on Plaintiff on May 7, 2025, when Plaintiff transferred into Newberry Correctional Facility (NCF) from another facility. Plaintiff also sued CO Haley Int-Hout based on her alleged

retaliatory acts on three occasions after Plaintiff filed a Prison Rape Elimination Act (PREA) complaint against Houghton for the strip search. (ECF Nos. 1, 1-2.) Plaintiff swore to his alleged facts "under the penalty of perjury." (*Id.* at PageID.14.) Following initial review of the complaint, the Court allowed the following claims to proceed: (1) Fourth Amendment claim against Defendant Houghton for performing an unreasonable strip search; (2) First Amendment religious exercise claim against Defendant Houghton for conducting the search in a manner contrary to Plaintiff's religious beliefs; and (3) First Amendment retaliation claims against CO Int-Hout for alleged retaliatory actions on May 14, 23, and 25, 2025. (ECF No. 4 at PageID.38–39.)

Plaintiff's sworn allegations pertaining to his remaining claims were previously summarized as follows:

> Plaintiff alleges that he arrived at NCF on May 7, 2025, and was subjected to a strip search by Defendant Houghton as a "new ride in." (ECF No. 1-2, PageID.12.) Plaintiff states that Defendant Houghton ordered him to step inside a bathroom and start undressing. Plaintiff asked Defendant Houghton to change his gloves because they were dirty and to shut the bathroom door because five other prisoners were seated so that they could see inside the bathroom, as well as any staff that might walk by during the search. (*Id.*) Defendant Houghton stated, "No, get used to others seeing you naked, now start undressing." (*Id.*) As Plaintiff was removing his clothing, he noticed Defendant Houghton smiling and smirking. Plaintiff then saw that Defendant Houghton's body camera was on, causing him to feel violated and humiliated. (*Id.*) Plaintiff also saw other prisoners watching the search and whistling and laughing at him. (*Id.*) Plaintiff tried to hurry up to "lift [his] private [sic], swat, cough and spread [his] buttocks," but after Plaintiff spread his buttocks Defendant Houghton ordered him to do so two more times and then laughed. (*Id.*) While Plaintiff stood naked as Defendant Houghton searched his clothing, other staff including two female staff members walked by and stopped to look inside the bathroom to see why other prisoners were laughing. (*Id.*) Plaintiff claims that he is Muslim and that exposing his bodies [sic] to others violated his religious beliefs, in addition to constituting cruel and unusual punishment. (*Id.*, PageID.9.)
>
> . . . .
>
> On May 14, 2025, Defendant Int-Hout told Plaintiff to report to the Inspector's office. When Plaintiff returned to the unit, Defendant Int-Hout was in Plaintiff's cube conducting a shakedown. As Defendant Int-Hout was leaving the cube, she stated, "Since you filing PREAs against other staff I'm make [sic] you suffer." (*Id.*)

> Plaintiff then saw that his legal papers had been destroyed, and there was coffee on his sheets. (*Id.*)
>
> On May 23, 2025, Defendant Int-Hout conducted another cube shakedown and threw away Plaintiff's medical catheters. Plaintiff went to the unit office and asked Defendant Int-Hout why she threw away his medical supplies, but she ordered him to "get out of her office." (*Id.*) . . . .
>
> On May 25, 2025, Defendant Int-Hout called Plaintiff into the office and stated, "Since you like filing PREA you got your wish so pack up you riding out." (*Id.*) After Plaintiff packed up his property, Defendant Int-Hout conducted another shakedown and emptied all of Plaintiff's property on the floor and poured water over it. (*Id.*)

(*Id.* at PageID.27–28.)

The allegations upon which the Court relied to allow Plaintiff's claims against CO Houghton to proceed are baseless; video shows it, and Plaintiff admits it. (Ex. A (CO Houghton's body-worn camera footage);[1] Ex. B (hallway surveillance footage); ECF No. 23-4; ECF No. 27.) While CO Houghton did conduct a routine strip search of Plaintiff in the bathroom, the door was propped open less than a foot by a small trash can, and CO Houghton stood in the doorway blocking any view of Plaintiff, dressed or undressed. The five prisoners outside the bathroom waiting their turns to be searched did not see Plaintiff and thus did not whistle or laugh at Plaintiff. Two or three male prison employees who walked by did not see Plaintiff. No females walked by while Plaintiff was in the bathroom. Plaintiff did not ask CO Houghton to change his gloves or close the door; nor did Plaintiff tell CO Houghton that he was Muslim. CO Houghton searched each article of clothing as Plaintiff removed it and handed it to CO Houghton; he did not wait until Plaintiff was fully undressed to search them. CO Houghton never told Plaintiff to squat and/or spread his buttocks once, let alone three times, and Plaintiff did not do so. Plaintiff did not lift his privates. CO Houghton did not tell Plaintiff, "[G]et used to others seeing you naked, now start

---

[1] Defendants filed the video footage, Exhibits A and B, separately and it is digitally retained as part of the official record in this case.

undressing." The *only* comment CO Houghton made to Plaintiff was, "That's good," prompting Plaintiff to redress seconds after he lowered his underwear.

Defense counsel deposed Plaintiff on April 24, 2026. (ECF No. 23-4.) Following Plaintiff's testimony under oath about the search, which mirrored his sworn complaint allegations (*id.* at PageID.135–46), counsel reminded Plaintiff of his oath to tell the truth and asked Plaintiff to confirm that his testimony had been truthful, which he did. (*Id.* at PageID.148–49.) Counsel then confronted Plaintiff with the video evidence indicating that Plaintiff's story was false and informed Plaintiff of his intent to request dismissal of the action based on Plaintiff's perjured testimony. (*Id.* at PageID.152–54.) Thereafter, Plaintiff admitted that he made the false allegations because he thought that CO Houghton should have been punished for having his body-worn camera on during the search. (*Id.* at PageID.154–55.) Plaintiff admitted that he eventually decided to create false allegations about the strip search. (*Id.* at PageID.164.) He included them in his complaint hoping that the Court would believe them. (*Id.*)

## II. Discussion

Defendants contend that the Court should invoke its inherent power to sanction a litigant for bad faith conduct and dismiss this action based on Plaintiff's perjured testimony during his deposition and his knowingly false sworn allegations in his complaint. It is well established that federal courts have the inherent power to sanction counsel or parties for litigation abuses. *See Mitan v. International Fidelity Ins. Co.*, 23 F. App'x 292, 298 (6th Cir. 2001) ("The federal courts' inherent power to protect the orderly administration of justice and to maintain the authority and dignity of the court extends to a full range of litigation abuses.") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991). "[A] court's reliance upon its inherent authority to sanction derives from its equitable power to control the litigants before it and to guarantee the integrity of the court

and its proceedings." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 512 (6th Cir. 2002). The Sixth Circuit has long recognized that a district court may dismiss an action to sanction "flagrant abuses." *Mitan*, 23 F. App'x at 298 (citing *Reid v. Prentice-Hall, Inc.*, 261 F.2d 700, 701 (6th Cir. 1958)); *see also Republic of the Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 73 n.10 (3d Cir. 1995) (noting that "a district court may dismiss a suit outright in response to litigation abuses"); *Wyle v. R.J. Renyolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983) (noting that federal courts have the "inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice") (citing *Phoceene Sous-Marine, S.A. v. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir. 1982)). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)) (internal quotation marks omitted).

A court's power to dismiss actions for abusive conduct extends to instances of perjury. As the Supreme Court observed in *ABF Freight System, Inc. v. National Labor Relations Board*, 510 U.S. 317 (1994):

> False testimony in a formal proceeding is intolerable. We must neither reward nor condone such a "flagrant affront" to the truth-seeking function of adversary proceedings. . . . In any proceeding, whether judicial or administrative, deliberate falsehoods "well may affect the dearest concerns of the parties before a tribunal," and may put the factfinder and parties "to the disadvantage, hindrance, and delay of ultimately extracting the truth by cross examination, by extraneous investigation or other collateral means." Perjury should be severely sanctioned in appropriate cases.

*Id.* at 323 (internal citations omitted). A party's pro se status is no excuse for bad faith litigation abuses arising from perjury or fabrication of evidence. *See Vaughan v. Brigham*, No. 3:10-05, 2011 WL 2633369, at *5 (E.D. Ky. July 5, 2011) (finding that the pro se plaintiff's conduct was

"not the result of inartful pleading or any lack of legal training" due to his pro se status; rather, it was "the result of bad-faith attempt to harass other parties . . . and a purposeful attempt to deceive the Court").

In this case, there is no question that Plaintiff made false sworn allegations in his complaint and perjured himself during his deposition testimony. Plaintiff even admits to perjury in his response, although he attempts to minimize his conduct. (ECF No. 27 at PageID.206 ("Even though Plaintiff perjur[ed] hi[m]self about what happened during [the] strip search, there still was a strip search done while Unknown Houghton had [his] body camera on[.]").[2] "Dismissal is particularly appropriate where a plaintiff seeks to enhance the merits of h[is] case with fabricated evidence and fictionalized testimony." *Young v. Office of U.S. Senate Sergeant at Arms*, 217 F.R.D. 61, 70 (D.D.C. 2003) (citing *Vargas v. Peltz*, 901 F. Supp. 1572, 1581 (S.D. Fla. 1995)); *see also McDowell v. Seaboard Farms of Athens, Inc.*, No. 95-609, 1996 WL 684140, at *10 (M.D. Fla. Nov. 4, 1996) ("Dismissal of a lawsuit with prejudice is a harsh sanction. However, the gravity of Plaintiff's behavior in fabricating evidence and committing perjury in an attempt to enhance his case warrants such a sanction."). Because Plaintiff readily admits to perjury and agrees that his claims against CO Houghton should be dismissed, dismissal of those claims is the minimal sanction warranted here.[3]

---

[2] As Defendants concede, pursuant to MDOC policy officers are directed to place their body-worn cameras in "sleep mode" during strip searches. Mich. Dep't of Corrs. Policy Directive 04.04.160 ¶ S(3). Nonetheless, an officer's violation of this policy does not give rise to a constitutional violation. *See Hubbert v. Myers*, No. 92-1232, 1993 WL 326707, at *1 (6th Cir. Aug. 26, 1993) (affirming summary judgment against a plaintiff who alleged that the defendants conducted a strip search which was videotaped by a female employee).

[3] Although Defendants do not raise the argument, I note that dismissal of this action is also a proper sanction under Federal Rule of Civil Procedure 11(c). Rule 11 applies to pro se litigants as well as attorneys, *see Kaye v. Acme Investments, Inc.*, No. 08-12570, 2008 WL 4482304, at *1 (E.D. Mich. Oct. 1, 2008), and courts are empowered to raise violations *sua sponte*. *See Bojicic v. DeWine*, 145 F.4th 668, 671 (6th Cir. 2025). Plaintiff's admitted conduct violated Rule 11(b)(3)

The real issue is whether the Court should dismiss the entire action. Plaintiff argues that the claims against CO Int-Hout should not be dismissed because his perjurious conduct did not extend to his retaliation claims against her. (ECF No. 27 at PageID.207.) Allowing Plaintiff to proceed with the remainder of his action, however, would send the wrong signal to others contemplating abuse of the judicial process by fabricating evidence or presenting perjured testimony relating to some, but not all, claims. This is because sanctions pursuant to a court's inherent authority serve "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). As one court stated in addressing similar misconduct:

> Permitting this lawsuit to proceed would be an open invitation to abuse the judicial process. Litigants would infer they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues. Litigants must know that the courts are not open to persons who would seek justice by fraudulent means.

*Brady v. United States*, 877 F. Supp. 444, 453 (C.D. Ill. 1994) (citation omitted).

Accordingly, given Plaintiff's undisputed and willful bad-faith conduct, his entire action should be dismissed.[4]

---

because his factual contentions concerning the strip search lack evidentiary support in light of his admitted false sworn complaint allegations. As with inherent power sanctions, dismissal of the action is an appropriate Rule 11 sanction in cases of serious misconduct. *See Amadasu v. General Revenue Corp.*, No. 1:04-cv-772, 2007 WL 9728561, at *5 (S.D. Ohio Sept. 21, 2007), *adopted by* 2008 WL 207936 (S.D. Ohio Jan. 24, 2008) (sanction of dismissal appropriate for the plaintiff's submission of forged documents).

[4] Given the foregoing recommendation, I find it unnecessary to address Defendants' alternative summary judgment argument.

## III. Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' motion (ECF No. 22) to the extent it requests dismissal as a sanction and dismiss this entire action **with prejudice**.

Dated: September 14, 2026

/s/ Sally J. Berens
SALLY J. BERENS
U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).